## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
## INDIANAPOLIS DIVISION

DAVID DAY,                                    )
                                             )
                        Petitioner,           )
                                             )
            v.                               )        Case No. 1:17-cv-00015-TWP-DLP
                                             )
UNITED STATES OF AMERICA,                    )
                                             )
                        Respondent.           )

## ORDER DENYING MOTION FOR RELIEF PURSUANT TO 28 U.S.C. § 2255
## AND DENYING A CERTIFICATE OF APPEALABILITY

This matter is before the Court on *pro se* Petitioner David Day's ("Day") Motion under 28

U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (Dkt. [1]).  Day seeks resentencing

pursuant to § 2255 on his conviction for Conspiracy to Commit Wire Fraud, a violation of 18

U.S.C. §§ 1343, 1349.  He contends that his trial attorneys' were ineffective, thus requiring his

sentence to be vacated and a new sentencing hearing to be held.  For the reasons explained below,

Day's motion for sentencing relief is **denied**, and a certificate of appealability is also **denied**.

## I.  LEGAL STANDARD

A motion pursuant to 28 U.S.C. § 2255 is the presumptive means by which a federal

prisoner can challenge his conviction or sentence.  *See Davis v. United States*, 417 U.S. 333, 343

(1974).  A court may grant relief from a federal conviction or sentence pursuant to § 2255 "upon

the ground that the sentence was imposed in violation of the Constitution or laws of the United

States, or that the court was without jurisdiction to impose such sentence, or that the sentence was

in excess of the maximum authorized by law, or is otherwise subject to collateral attack."  28

U.S.C. § 2255(a).  The scope of relief available under § 2255 is narrow, limited to "an error of law

that is jurisdictional, constitutional, or constitutes a fundamental defect which inherently results in

a complete miscarriage of justice." *Borre v. United States*, 940 F.2d 215, 217 (7th Cir. 1991) (internal citations omitted).

## II. FACTUAL AND PROCEDURAL BACKGROUND

On September 10, 2013, Day, along with several co-defendants, was charged in a thirty-four count Indictment. *United States v. Day, et al.*, No. 1:13-cr-00185-TWP-DML-1 (hereinafter "Crim. Dkt."), Dkt. [1] (S.D. Ind. Sept. 10, 2013). Day was charged in count one with Conspiracy to Commit Wire Fraud in violation of 18 U.S.C. §§ 1343, 1349. Count three charged Day with Making False Statements in Loan and Credit Applications in violation of 18 U.S.C. § 1014. The Government eventually dismissed count three in exchange for Day's guilty plea to count one. The fraud involved Day and a co-defendant procuring unsuspecting victims' social security numbers and assigning them to individuals and providing instruction to those individuals to open retail lines of credit (using the stolen social security numbers) to purchase assets including automobiles, jewelry, and other goods. Crim Dkt. 862 at 48.

Day was initially represented by Federal Community Defender Monica Foster ("Foster"), but on December 12, 2014, Day retained attorneys John M. Christ ("Christ") and John M. Schwartz ("Schwartz") (collectively, "trial counsel"). Crim. Dkts. 579, 580. Thereafter, Foster withdrew as Day's attorney. Crim. Dkt. 588.

### A. Plea Offers

#### 1. Government's June 2014 Offer

In early June 2014, the Government relayed an initial plea offer to Foster. Day would plead guilty under Rule 11(c)(1)(B) (which allows the parties to make recommendations as to the defendant's sentence, but does not bind the Court). Under the terms of the agreement, Day would, among other things, plead guilty to count one, waive his right to appeal the conviction and

sentence, and waive his right to challenge his conviction and sentence in a § 2255 motion (except claims of ineffective assistance of counsel). *See* Dkt. [18]-1, ¶ 4. In exchange, the Government would move to dismiss count three, advise the Court of the nature, extent and timing of his acceptance of responsibility and cooperation with law enforcement, and recommend a sentence at the low end of the United States Sentencing Guidelines (the "Sentencing Guidelines" or "U.S.S.G.") range. The parties would stipulate that Day's total offense level was 24 under the Sentencing Guidelines, calculated as follows: pursuant to § 2B1.1(a)(1), Day's base offense level was 7; 14 levels were added pursuant to § 2B1.1(b)(2)(A)(i) because the actual loss attributable to Day was greater than $400,000.00 but less than $1,000,000.00; two levels were added pursuant to § 2B1.1(b)(2)(A)(i) because there were more than 10 victims; two levels were added pursuant to § 2B1.1(b)(11)(C)(i) because the offense involved the unauthorized transfer or use of identification unlawfully produced; two levels were added pursuant to § 3B1.1(c) because Day was an organizer, leader, manager, or supervisor in the criminal activity; and three levels were subtracted pursuant to § 3E1.1(a) and (b) with the understanding that Day would clearly demonstrate acceptance of responsibility for the offense. No stipulation would be made as to his criminal history category. However, with a Criminal History Category I, Day's guideline range would have been 51–63 months.

### 2.    September 2014 Counter-Offer by Foster

On or around September 2, 2014, prior to her withdrawal from the case, Foster presented a counter-offer. *See* Dkt. [18]-1, ¶ 5. She requested a plea deal wherein Day would plead guilty to count one and, in exchange, the Government would agree to a 40-month term of imprisonment under a binding Rule 11(c)(1)(C) plea agreement. Under the terms of the proposed agreement, the

Government would also agree to a guideline calculated range of 46–57 months. The Government did not respond to Foster's counter-offer.

### 3.    December 2014 Plea Offer

Day's retained counsel entered their appearances on December 12, 2014—45 days before the scheduled trial date of January 26, 2015. On December 17, 2014, the Government mailed its prior June 2014 plea offer to Day's new attorneys.

On January 15, 2015, eleven days before trial, and without the benefit of a written plea agreement, Day filed a petition to enter a plea of guilty to count one. Crim. Dkt. 627; Crim Dkt. 849 at 4; Crim. Dkt. 862 at 3-4. He did so with the understanding that the Government would move to dismiss count three of the Indictment, and he would waive his right to appeal and collaterally attack his conviction and sentence in a § 2255 motion (excluding claims of ineffective assistance of counsel). Crim. Dkt. 764; Crim Dkt. 849 at 4; Crim. Dkt. 862 at 6-8. Because Day plead guilty without the benefit of a written plea agreement, there were no other concessions or agreements by or between the parties regarding his plea of guilt.

In his petition to enter a plea of guilty, Day stated that he and his attorneys had discussed the charges in the Indictment, the facts and circumstances concerning the charges, and possible defenses. Crim. Dkt. 764. He stated that his attorneys had advised him that the statutory punishment for conspiracy to commit wire fraud is a maximum of twenty years. He further stated that his attorneys had "done all that anyone could do to counsel and assist" him and that he understood the proceedings in the case. He acknowledged that he was guilty and made "no claim of innocence." Day's trial counsel certified that the plea was consistent with the advice they provided to Day, and that he was entering his plea of guilty "voluntarily and understandingly."

**B.** **Plea Hearing**

Day's change of plea hearing was held on January 16, 2015. Crim. Dkt. 849. At the hearing, Day swore under oath that he: (1) had fully discussed with his attorneys the charges in the Indictment and possible defenses, *id.* at 7; (2) understood that he was facing a possible 20-year sentence, *id.* at 7, 9; (3) was satisfied with the representation and advice his attorneys provided, *id.* at 9; (4) was entering his plea of guilty of his own free will because he was in fact guilty, *id.* at 9-10; (5) understood the many rights his plea of guilty relinquished, *id.* at 10-13; (6) discussed with his attorneys the factors the judge would consider in sentencing him, *id.* at 14-15; (7) reviewed with his attorneys the Sentencing Guidelines as they applied to him, *id.* at 15-16; and (8) understood the judge would consider the non-binding Sentencing Guidelines range in determining his sentence, *id.* at 15-16.

The judge advised Day that she would use her "discretion to fashion a sentence within the statutory range . . . of up to 20 years." *Id.* at 14. Additionally, the judge advised him that if the Court sentenced him outside the guideline range or to a different sentence from that recommended by either party, he would not be allowed to withdraw his guilty plea. *Id.* at 15-16. After hearing testimony establishing a factual basis for Day's guilty plea to count one, *id.* at 17-25, and Day's agreement as to the truth of the factual testimony, *id.* at 25-26, the Court accepted his guilty plea as to count one and Day was adjudged guilty of Conspiracy to Commit Wire Fraud, *id.* at 27. The matter was scheduled for sentencing hearing on April 24, 2015.

**C.** **Day's Assistance**

In April 2015, the Government advised Day's retained counsel of its willingness to move for a reduction under Sentencing Guidelines § 5K1.1, should Day continue to provide substantial assistance in the investigation of the offenses at issue and other investigations that had come to

light as a result of a proffer meeting with Day. *See* Dkt. [18]-1 at 15-16. This meeting and Day's agreement to cooperate with the Government were memorialized in email communications between the Government and counsel Christ. Indeed, Day made specific requests in the email communications regarding the sealing of documents that would be filed with the Court to continue the sentencing hearing in an effort to allow for his full cooperation. The Court granted a continuance of the sentencing hearing which was rescheduled for November 24, 2015.

On November 17, 2015, a few days before his sentencing hearing, Day filed a waiver of his appeal rights and his right to challenge his sentence or conviction in a § 2255 motion, excluding claims of ineffective assistance of counsel. Crim. Dkt. 764. Also on that day, the Government filed a sealed motion pursuant to Sentencing Guidelines § 5K1.1 and recommended a 2-level reduction in Day's total offense level. Crim. Dkt. 765.

## D.    Presentence Investigation Report

The United States Probation Office completed a presentence report ("PSR") in preparation for Day's sentencing hearing. Crim. Dkt. 704. Applying the 2014 edition of the Sentencing Guidelines, the PSR writer determined that Day's criminal history score was a Category I and his base offense level was 7. *Id.* at ¶ 31. However, the probation officer determined that several adjustments applied which significantly increased Day's offense level. Because his offense resulted in a total loss of more than one million dollars, his offense level increased by 16 levels. U.S.S.G. § 2B1.1(b)(1)(I). *Id.*, ¶ 32. Another six levels were added because his offense involved 62 victims, U.S.S.G. § 2B1.1(b)(2)(B), and because the offense involved the use of social security numbers to obtain loans, U.S.S.G. § 2B1.1(b)(11)(C)(i). *Id.*, ¶¶ 33, 34. Four levels were added because he was an organizer or leader of the criminal activity that involved five or more participants, U.S.S.G. § 3B1.1(a). *Id.*, ¶ 36. The upward adjustments increased Day's offense

level to 33.   The Government's motion under Sentencing Guidelines § 5K1.1, recommended a two-level downward departure for substantial assistance for a total offense level of 31.  Dkt. [766]. The PSR noted a Criminal History Category I and an offense level of 31 which would result in a Sentencing Guidelines range of 108 to 135 months of imprisonment.  *Id.* The final PSR was docketed on November 19, 2015, however the preliminary PSR filed March 20, 2015 contained the same Sentencing Guideline calculations. Dkt. [704].

**E.**      **Sentencing Hearing**

Day's sentencing hearing was held as scheduled on November 24, 2015.  At the hearing, the Court adopted without objection from Day's counsel most of the findings recommended by the probation officer in Day's PSR.  Crim. Dkt. 862 at 10-11. Following evidence and argument, the Court determined that Day had accepted responsibility for his criminal conduct and was entitled to a two-level reduction in his offense level.  *Id.* at 15.  The Court accepted the Government's recommendation in their motion under § 5K1.1 for a two-level reduction based on Day's substantial assistance. With an offense level of 29, the advisory Sentencing Guideline range was 87-108 months.  The Court sentenced Day to 92 months imprisonment and ordered restitution to his victims.  *Id.* at 44-45.  Judgment was entered on December 7, 2015.  Crim. Dkt. 780.

In exchange for concessions made by the Government, and in keeping with the written waiver filed on November 17, 2015, Day expressly waived his right to appeal and agreed "not to contest the conviction or sentence or the manner in which it will be determined in any collateral attack, including but not limited to an action brought under Title 28, United States Code § 2255", excluding any claims of ineffective assistance of counsel.  Crim. Dkt. 862 at 6-7.

Day filed his motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 on January 3, 2017, and this action was opened. The Government has responded in opposition, and Day has replied.

## III. DISCUSSION

Day seeks relief pursuant to § 2255 arguing that his trial counsel provided ineffective assistance for: (1) improperly advising Day to reject the Government's initial plea offers despite lacking experience in federal criminal defense work, failing to review the discovery, and lacking a good faith basis in their advisements (2) failing to object to sentencing enhancements related to loss and managerial role; (3) failing to argue for sentencing under the 2015 Sentencing Guidelines and not the 2014 Sentencing Guidelines; and (4) failing to represent Day at his interview with the probation officer for preparation of the PSR and failing to follow up and argue against the denial of the additional one-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1.

In his supplemental petition, Dkt. [9], Day fails to include his claim that his counsel was ineffective for failing to argue for sentencing under the 2015 Guidelines and not the 2014 Guidelines. The Court agrees with the Government's argument that Day has waived this claim and thus, the Court need not address the merits of this claim. In their response, the Government asserts that in his appellate waiver, Day specifically waived his rights to challenge his sentence under the Guidelines in a § 2255 motion and trial counsel was not ineffective.

## A. Waiver of § 2255 Motion

The Government argues that Day waived his claim that trial counsel was ineffective by their alleged failure to seek reductions in his offense level based on his role in the offense (§ 3B1.1), the monetary loss amount (§ 2B1.1(b)), and his acceptance of responsibility (§3E1.1),

because Day's ineffective assistance of counsel claim is in effect a challenge to the manner in which his sentence was determined.

Day's appellate waiver relevantly stated as follows:

> Additionally, the defendant expressly agrees not to contest the conviction or sentence or the manner in which it was determined in any collateral attack, including, but not limited to, an action brought 28 U.S.C. § 2255. This waiver of appeal specifically includes all provisions of the sentence imposed in this case, including the terms and conditions of supervised release and the amount of any restitution, fine or forfeiture. Such 28 U.S.C. § 2255 waiver does not encompass claims, either on direct or collateral review, that the defendant received ineffective assistance of counsel.

Crim. Dkt. 764; Crim. Dkt. 862 at 6-7. Day correctly points out that, unlike the § 2255 waivers in the cases cited by the Government, *see* Dkt. [18] at 24-25, his § 2255 waiver placed no limitations on the claims of ineffective assistance of counsel he could bring in a § 2255 motion. Because each of Day's claims is, at least facially, a claim of ineffective assistance of counsel, Day has not waived his right for review of these claims and the Court will discuss the merits of each claim.

**B.**     <u>**Ineffective Assistance of Counsel**</u>

A petitioner claiming ineffective assistance of counsel bears the burden of showing: (1) that trial counsel's performance fell below objective standards for reasonably effective representation, and (2) that this deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 688-94 (1984); *United States v. Jones*, 635 F .3d 909, 915 (7th Cir. 2011). If a petitioner cannot establish one of the *Strickland* prongs, the court need not consider the other. *Groves v. United States,* 755 F.3d 588, 591 (7th Cir. 2014). To satisfy the first prong of the *Strickland* test, a petitioner must direct the court to specific acts or omissions of his counsel. *Wyatt v. United States,* 574 F.3d 455, 458 (7th Cir. 2009). The court must then consider in light of all of the circumstances whether counsel's performance was outside the wide range of professionally competent assistance. *Id.* In order to satisfy the prejudice component, a petitioner must establish

that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

1.    **Advising Day to Reject the Plea Offer**

Day first argues that his trial counsel, Christ and Schwartz, were ineffective for improperly advising him to reject the Government's plea offers despite lacking experience in federal criminal defense work, failing to review the discovery, and lacking a good faith basis in advising him. He alleges that in the summer of 2014, Foster presented him with a plea offer in which the parties would agree to a sentence of about 36 months, without a proposed leadership role. *See* Dkt. [9] at 11. Day sought new counsel from Christ and Schwartz related to this summer 2014 deal. He asserts that Christ and Schwartz believed they could prevail at trial advised him to reject the plea offer. They further believed they could get a better offer by "holding out." *Id*. at 1. Day contends their advice to go to trial was based on trial counsel's cursory research online and failure to review the records of the case. *Id.* at 22. Some months later, he received a second offer that allegedly proposed a 54 months' term of incarceration. *Id.* at 12. Day asserts that Christ urged him not to accept this second, higher, offer. *Id.* at 22. Day alleges that he would have accepted the Government's plea offer in the summer of 2014 if he had received competent advice from trial counsel[1]. *Id.* at 23. He later apparently asked his trial counsel to "find some way for him to plead guilty, even without a deal in place." *Id.* He contends that if he had accepted the Government's initial offer, he "would have likely been subjected to an advisory Guidelines range that was substantially lower than the one to which he was assigned, and it is reasonably probable that he would have been sentenced to a substantially lesser term of imprisonment." *Id.* at 2; *see also id.* at 13-14.

---

[1] Day does not allege that Foster failed to give him competent advice.

When claiming ineffective assistance of counsel based on a rejection of a plea agreement, a petitioner must present evidence "beyond the allegation contained in his motion" that he was actually offered a plea agreement. *Gallo-Vasquez v. United States*, 402 F.3d 793, 798 (7th Cir. 2005) (no error in dismissing § 2255 motion without hearing where "aside from the allegations contain in [petitioner's] motion, there [was] no evidence that the government offered petitioner a plea deal."). Courts need not "reopen" the case for hearing without "*some* threshold showing of the evidentiary basis," for the claim "beyond mere conclusory allegations." *Martin v. United States*, 789 F.3d 703, 707 (7th Cir. 2015) (emphasis in original) (affirming summary dismissal of a § 2255 claim of ineffective assistance of counsel regarding the rejection of a plea when the only evidence of the existence of a plea was the petitioner's "conclusory reference to the 'Government's 30-year plea offer'").

Here the undisputed record reflects that there was no "36 months" plea offer or a "54 month" plea offer. There was a single plea offer that the Government offered to Day on two separate occasions. *See* Dkt. [18]-1 at 6-13 (plea offer); Dkt. [18]-1 at 2-4 (affidavit regarding the offer); Dkt. [29]-1 at 2-4 (affidavit of Day); Dkt. [29]-2 (affidavit of David Day Sr.). Under the terms of the agreement, the parties would stipulate to a total offense level 24, *see infra* Section II.A.1, which would result in a Sentencing Guidelines range of 51 to 63 months.

However, the agreement also included a statement that "[t]he parties understand and agree that these Stipulations are binding on the parties but are only a recommendation to the Court and that the Court will determine the advisory sentencing guidelines applicable in this case." Dkt. [18]-1 at 9-10. Even if Day had accepted the Government's plea offer in either June 2014 or in December 2014, the Court would not be bound by the stipulations regarding the total offense level and had the discretion to independently determine the appropriate advisory sentencing guidelines

and applicable Sentencing Guidelines range. In preparing the PSR the probation officer was not bound by the stipulations of the parties, rather, the PSR writer was required to calculate and determine an appropriate offense level and guideline sentencing range. Day cannot show that the Court would have reached a different determination as to the appropriate advisory Sentencing Guidelines and applicable Guidelines range. Therefore, he fails to show that he was prejudiced, under the second prong of *Strickland*.

Moreover, Day's version of the events is that his trial counsel believed they could be successful at trial and if not, as a matter of strategy, believed that holding out would result in a better plea offer. Based on these circumstances, Day's trial counsel's failure to advise him to accept the plea offer was not ineffective assistance of counsel.

## 2. Failing to Object to Sentencing Enhancement Regarding Loss Amount Under § 2B1.1(b)

Day next argues that his trial counsel was ineffective for failing to object to the PSR's calculation of the amount of loss from his fraudulent activity. Dkt. [9] at 27-29. Day asserts that the amount is "slightly under $500,000" if one factors in the security interests in the vehicles and the duplication of intended losses, *id.*, and not the loss of $1,704,448.86 found by the sentencing court, *see* Crim. Dkt. 862 at 14.

The Seventh Circuit is "reluctant to allow prisoners to circumvent the rule against raising Sentencing Guidelines arguments in collateral proceedings by recasting their Guidelines arguments as claims of ineffective assistance of counsel." *Allen v. United States*, 175 F.3d 560, 563 (7th Cir. 1999). Only "Sentencing Guidelines errors of constitutional proportion" that resulted from an ineffective assistance of counsel may be considered. *Id.* However, "an attorney's unreasonable failure to identify and bring to a court's attention an error in the court's Guidelines

calculations that results in a longer sentence may constitute ineffective assistance." *United States v. Jones*, 635 F.3d 909, 916 (7th Cir. 2011) (citing *Glover v. United States*, 531 U.S. 198 (2001)).

Under the Sentencing Guidelines, a defendant's base level is increased according to the loss associated with the crime. U.S.S.G. § 2B1.1(b)(1). "Loss" in § 2B1.1(b)(1) is defined as "the greater of actual loss or intended loss." U.S.S.G. § 2B1.1 cmt. n.3(A). "'Actual loss' means the reasonably foreseeable pecuniary harm that resulted from the offense." U.S.S.G. § 2B1.1 cmt. n.3(A)(i). "Reasonably foreseeable pecuniary harm" means loss that the defendant knew or reasonably should have known "was a potential result of the offense." U.S.S.G. § 2B1.1 cmt. n.3(A)(iv). The government must prove its loss estimate is within a particular guideline range by a preponderance of the evidence using reliable and specific evidence. *United States v. Hatchett*, 31 F.3d 1411, 1418 (7th Cir. 1994). However, "the court need only make a reasonable estimate of loss. … [T]he court's loss determination is entitled to appropriate deference." U.S.S.G. § 2B1.1, application note 3(C); *United States v. Ross*, 77 F.3d 1525, 1552 (7th Cir. 1996). The PSR summarized the loss amount from Day's fraud in a chart:

| SSN/CPN | Retail Loss | Vehicle Loss | Attempted Vehicle Loss | Total |
|---|---|---|---|---|
| xxx-xx-6174 | $5,169.25 | $55,355.99 | $59,160.00 | $119,685.24 |
| xxx-xx-7896 | $10,085.00 | $39,833.11 | $43,671.00 | $93,589.11 |
| xxx-xx-3344 | $1,851.33 | $8,100.33 | $26,370.67 | $36,322.33 |
| xxx-xx-3214 | $7,913.00 | $78,478.48 | $37,367.00 | $123,758.48 |
| xxx-xx-6173 | $250.00 | $42,519.88 | $41,374.00 | $84,143.88 |
| xxx-xx-9874 | $3,500.00 | $26,926.09 | $100,947.00 | $131,373.09 |
| xxx-xx-1267 | $5,051.00 | $31,151.45 | $42,713.00 | $78,915.45 |
| xxx-xx-1177 | $11,878.00 | $39,885.20 | $0 | $51,763.20 |
| xxx-xx-7303 | $0 | $4,438.99 | $85,289.00 | $89,727.99 |
| xxx-xx-6432 | $800.00 | $41,172.61 | $23,735.00 | $65,707.61 |

| | | | | |
|---|---|---|---|---|
| xxx-xx-0619 | $300.00 | $25,481.88 | $0 | $25,781.88 |
| xxx-xx-0332 | $2,000.00 | $26,144.34 | $25,785.00 | $53,929.34 |
| xxx-xx-9157 and xxx-xx-8357 | $17,939.00 | $57,978.35 | $0 | $75,917.35 |
| xxx-xx-3138 | $6,218.60 | $9,092.21 | $69,202.00 | $84,512.81 |
| xxx-xx-7131 | $1,300.00 | $44,094.09 | $94,689.00 | $140,083.09 |
| xxx-xx-7451 | $4,500.00 | $45,004.01 | $59,727.00 | $109,231.01 |
| xxx-xx-6489; xxx-xx-9469; xxx-xx-4217; xxx-xx-4217; xxx-xx-4417; xxx-xx-5964; & xxx-xx-6184 | $25,510.00 | $0 | $314,497.00 | $340,007.00 |
| TOTAL | $104,265.18 | $575,657.01 | $929,932.359 | $1,704,448.86 |

*See* Dkt. [9] at 9; Crim. Dkt. 704 at 7-8. The PSR writer also separately calculated a restitution amount of $679,922.19. *Id.* at 23. At the hearing, the Court adopted the findings on the loss amount in the PSR. Crim. Dkt. 862 at 10-11, 14. The Court's loss determination, which is afforded appropriate deference, was supported by a detailed chart that listed retail loss, vehicle loss, and attempted vehicle loss, all of which was reasonably foreseeable pecuniary harm. However, even if the Court instead categorizes the attempted vehicle loss as "intended loss," the total calculation in the PSR chart above was erroneous – the total amount of attempted vehicle loss was $1,024,526.67. Given that "loss" is the greater of "actual loss or intended loss," the loss attributable to Day was at a minimum above $1,000,000.00 and thus there was no error in the Court's enhancement of 16, pursuant to § 2B1.1(b)(1)(I) for loss between $1,000,000.00 and $2,500,000.00. *See* Crim. Dkt. 704 at 10.

The Court notes that although Day asserts that loss amount is "slightly under $500,000", he fails to identify any evidence of such. The Court cannot now attempt to recalculate the losses to match Day's unsupported assertions. *DeSilva v. DiLeonardi*, 181 F.3d 865, 867 (7th Cir. 1999) ("A brief must make all arguments accessible to the judges, rather than ask them to play archaeologist with the record."); *Mathis v. New York Life Ins. Co*., 133 F.3d 546, 548 (7th Cir. 1998) ("As we have stated before, even pro se litigants …must expect to file a legal argument and

some supporting authority. A litigant who fails to press a point by supporting it with pertinent authority, or by showing why it is sound despite a lack of supporting authority . . . forfeits the point. We will not do his research for him.") (quotation marks, citations, and brackets omitted). Day's bald statements, at this juncture, are insufficient to support a claim of ineffective assistance.

Additionally, Day did not file any objections to the PSR as to the calculation of the loss amount. Moreover, despite several opportunities to do so during the sentencing hearing, Day never objected to or disputed the loss amount calculation. Rather, the only objection was as to the acceptance of responsibility:

> THE COURT: All right. So the Court will note that paragraph number 40 is up in the air. Okay.
>
> All right. Mr. Schwartz, Counsel, have you and your client reviewed the Presentence Report that was prepared back in March, docket number 704, as well as the addendum that was filed November 19th, docket number 766?
>
> MR. SCHWARTZ: We have, Your Honor.
>
> [THE COURT:] Have you seen all that, David?
>
> THE DEFENDANT: Yes.
>
> THE COURT: And do you have any --
>
> THE DEFENDANT: Yes, Your Honor.
>
> THE COURT: -- objections or corrections to anything?
>
> MR.SCHWARTZ: We would like to question the acceptance of responsibility, also. And I think that's something that we'll be talking about more, but we do not agree that Mr. Day has not taken responsibility for his actions.

Crim. Dkt. 862 at 9-10. Day was given another opportunity later at the hearing to dispute the loss amount:

> THE COURT: Okay. All right. With respect to Count 16 – I'm sorry, Count 1, conspiracy to commit wire fraud, based upon the United States Sentencing Guidelines and consistent with the law, I find that for the offense charged, the base

offense level is seven. For the specific offense characteristic that the loss was $1,704,448.86, 16 levels are added. And this is considering the current guideline with the adjustment. The loss was between $1,500,000 but less than $3,500,000. Therefore, 16 levels are added.

…

At this time, Mr. Schwartz, you may present any evidence and argument on your client's behalf.

And, Mr. Day, you're allowed to make a statement of allocution. I know you've testified previously under – well, you were subject to cross-examination, but you are allowed to make any statement that you wish to make in addition to the letter that you submitted, which is Defendant's Exhibit 1.

*Id.* at 14-15.

Thus, Day is unable to show that his counsel's performance was deficient, under the first prong of *Strickland*, if there is nothing to object to. In addition, he cannot show that he was prejudiced, under the second prong of *Strickland*, when he was personally given multiple opportunities to object during the sentencing hearing and failed to do so. Thus, his trial counsel's failure to object to the loss amount was not ineffective assistance of counsel.

### 3. Failing to Object to Sentencing Enhancement Regarding Being a Leader or Organizer Under § 3B1.1

Day also argues that his trial counsel was ineffective for failing to object to the PSR's imposition of a four-level enhancement under U.S.S.G. § 3B1.1 for being a leader or organizer. Dkt. [9] at 25-28. Day asserts that he was merely a broker, and not a leader, organizer, manager, or supervisor.

"The central purpose of § 3B1.1(b) is to punish a defendant for his relative responsibility within a criminal organization." *United States v. Garcia*, 272 F.3d 866, 876 (7th Cir. 2001) (quoting *United States v. Fones*, 51 F.3d 663, 665 (7th Cir. 1995)). If it is determined that a defendant had no greater role than any other participant did, he cannot receive a § 3B1.1

enhancement. *Fones,* 51 F.3d at 665. In determining whether a defendant played a greater role as a manager or supervisor,

> [f]actors the court should consider include the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.

*Gracia,* 272 F.3d at 876-77; U.S.S.G. § 3B1.1, cmt. n. 4; *Fones*, 51 F.3d at 665 (listing cases). "All factors need not be present, but the defendant must have exercised some control over others involved in the commission of the offense." *Gracia*, 272 F.3d at 877 (citation and internal quotation marks omitted). It is sufficient that the defendant orchestrated or coordinated the activities of others. *Id.* While the criminal activity must involve five or more participants, to qualify for the increase as manager or supervisor, the district court must find the defendant had control over only one participant. *Id.*; U.S.S.G. § 3B1.1, cmt. n. 2; *Fones*, 51 F.3d at 668.

In this case, Day admitted that he "organized the scheme by cultivating customers/clients and managed the Indianapolis, Indiana-based criminal activity by describing the steps each customer/client would need to follow to increase their fraudulently established credit history." Crim. Dkt. 632 at 5. While his co-conspirators provided the social security numbers or credit profile numbers ("CPNs"), "all of the customers were recruited into the conspiracy by Day. Day was their point of contact throughout their involvement in the offense; they did not communicate with the other co-conspirators. Crim. Dkt. 704 at 7. "There were several – countless transactions, countless conversations, countless times when this defendant schooled, tutored, and taught these other defendants, who stood before this Court time after time after time, to perform these fraudulent acts." Crim. Dkt. 862 at 41. In imposing the sentence, the Court noted that Day was:

*leading a conspiracy* to commit wire fraud, an offense that involves over 17 co-conspirators and defendants and over 62 victims. Specifically, Mr. Day *supplied* other people's Social Security numbers to individuals and *instructed* them to open retail lines of credit and purchase items, mostly automobiles. Many of the co-conspirators never made any payments on these loans. Many themselves were duped into thinking that this scheme would somehow repair their credit scores.

…

This was a three-year criminal conspiracy. Apart from greed and fiscal irresponsibility, there are few factors which would lead to Mr. Day's participation and *leadership role* in this conspiracy.

…

 He was a swindler who, at his worst, *managed to recruit* at least 16 other people to engage in this fraud conspiracy.
Many of these people were his friends and acquaintances. He said today that seven of them were his friends. Of those 16 or 17 co-defendants, several told me that they were -- that he recruited them at church. He found them at church and told -- some of them were single mothers who were desperate to make money, and *he got them involved* in this horrible scheme, convincing them that they would repair their credit.

*Id.* at 48-50 (emphasis added). There was no error in the Court's application of the four-level enhancement pursuant to U.S.S.G. § 3B1.1 where Day stipulated to his role in the conspiracy, filed no objection to the PSR, and raised no objections at the sentencing hearing (Crim. Dkt. 862), and where the Court found ample evidence of his leadership and organizer role.

Thus, Day is unable to show that his counsel's performance was deficient, under the first prong of *Strickland*, if there is nothing to object to. In addition, he cannot show that he was prejudiced, under the second prong of *Strickland*, when he was personally given multiple opportunities to object during the sentencing hearing and failed to do so. Thus, his trial counsel's failure to object to the enhancement under § 3B1.1 was not ineffective assistance of counsel.

4. <u>**Failing to Represent and Object to Denial of Reduction for Acceptance of Responsibility Under § 3E1.1**</u>

Day's last claim of ineffective assistance of counsel is that his trial counsel failed to represent him at his presentence interview with the probation officer for preparation of the PSR and also failed to follow up and argue against the denial of acceptance of responsibility credit under U.S.S.G. § 3E1.1.

It is well-settled law that the Sixth Amendment right to counsel does not extend to presentence interviews with a probation officer. *United States v. Jackson*, 886 F.2d 838, 845 (7th Cir. 1989); *see also United States v. Gordon*, 4 F.3d 1567, 1571-72 (10th Cir. 1993) ("Defendant had no Sixth Amendment right to the presence or advice of counsel during the presentence interview"); *Brown v. Butler*, 811 F.2d 938, 940-41 (5th Cir. 1987); *Baumann v. United States*, 692 F.2d 565, 577-78 (9th Cir. 1982). As ineffective assistance of counsel cannot occur when there is no constitutional right to counsel. Although it is a common practice in this district that defense counsel are present for the presentence interview, it is not required. Accordingly, Day's trial counsel were not ineffective for not accompanying him to his presentence interview with the probation officer.

As to his claim that his counsel failed to follow up and argue against the denial of acceptance of responsibility credit under U.S.S.G. § 3E1.1, the record reflects that during the sentencing hearing, his counsel did argue for the acceptance of responsibility credit under U.S.S.G. § 3E1.1, and successfully obtained that credit on his client's behalf. Crim. Dkt. 862 at 10, 14-15 ("The defendant is entitled to the two-level reduction for acceptance of responsibility, as the government agrees, and defense counsel has presented the defendant, so the Court will give him the two-level reduction."). Day speculates that "had Day been proposed for a 2-level reduction from the beginning, the government would have moved for a third point pursuant to U.S.S.G. § 3E1.1(b)." Dkt. [9] at 31. He asserts "[a]t sentencing, the government offered to make that motion,

but Defense Counsel inexplicably failed to accept the offer, and no third point was assessed. Without the government motion, no third-level reduction is permitted under the Guidelines…" *Id.* at 32.

During the sentencing hearing, the Government made a comment about the third level, but ultimately only asked for a two-level reduction for acceptance of responsibility:

> THE COURT: It was filed November 19th. Do you have any objections or corrections to anything in either the PSR, the original report or the addendum?
>
> MS. RIDGEWAY: It's not an objection, Your Honor. I would just state for the record that the government does intend to present enough facts to the Court that you would be able to make a decision whether or not he is entitled to acceptance of responsibility under paragraph 40 on page 11 of the PSR. The government's position is that the Court could find that his decision to plead guilty, albeit without a plea agreement, could rise to the level of acceptance. We are not asking – we're moving the Court for the third level of acceptance, that we will present enough facts to the Court for you to make a decision.
>
> THE COURT: Okay. So it is the government's position that he should receive the two level under paragraph number 40?
>
> MS. RIDGEWAY: It was my position. I'll tell you that when I just read that letter that the Court has now –
>
> THE COURT: I haven't read it yet.
>
> MS. RIDGEWAY: -- the defendant's exhibit. I just read it now, and I'm questioning my decision on acceptance of responsibility based on the second page of that letter, where he talks about not realizing that the CPNs were actually Social Security numbers, which is counterintuitive considering the factual basis that he already admitted to and that the Court accepted.
>
> THE COURT: Okay.
>
> MS. RIDGEWAY: So I'm hesitant now, but before today's hearing, I was ready to say that he -- that the government's position is that he should get the two levels.
>
> THE COURT: All right. So we'll see whether or not I'll award that once I -- I haven't read the letter yet either.
>
> MS. RIDGEWAY: Thank you, Your Honor.

> THE COURT: All right. So the Court will note that paragraph number 40 is up in the air. Okay.

Crim. Dkt. 862 at 8-9.

First, there is no record of the Government offering to make a motion for the third point pursuant to U.S.S.G. § 3E1.1(b) beyond what appears to have been the slip of the tongue. Indeed, the Government contemplated not supporting even the two-level reduction for acceptance of responsibility based on the letter Day himself submitted. *Id.* at 9 ("MS. RIDGEWAY: …I'm questioning my decision on acceptance of responsibility based on the second page of that letter, where he talks about not realizing that the CPNs were actually Social Security numbers."). Thus, where there was no offer, his trial counsel could not have accepted the offer and could not have been ineffective for failing to accept the offer.

Second, it is too speculative to presume that the Government would have moved for a third point pursuant to U.S.S.G. § 3E1.1(b). As the Seventh Circuit has explained:

> Without a government motion, the point could not be awarded. *See United States v. Nurek*, 578 F.3d 618, 624 (7th Cir. 2009). Many factors go into the government's decision. For example, in one case the government refused to move for the third point because the defendant pleaded guilty to only one of the counts against him and showed no remorse. *Id.* In another, the government did not move for the third point because the defendant had been unclear about his intention to plead until late in the government's trial preparation. *United States v. Davila-Rodriguez*, 468 F.3d 1012, 1014–15 (7th Cir. 2006). Where defendants pleaded guilty but refused to give the government "a full and complete accounting of [their] own offense conduct" we condoned the government's position that "granting acceptance points would be inappropriate." *United States v. Boyle*, 484 F.3d 943, 945 (7th Cir. 2007).

*Hicks v. United States*, 886 F.3d 648, 651 (7th Cir. 2018). Here, where the Government was hesitant to even support a two-level reduction, it is unsurprising that the Government did not move for the awarding of a third point. Moreover, the Court itself noted that up until the sentencing hearing, Day had still not accepted responsibility. ("THE COURT: I was surprised that Mr. Day came in and admitted and accepted responsibility, because up until a few moments ago, he had

not.  He kept -- he continued to minimize and quantify everything that he had done.  So I'm not tired of hearing that." (Crim. Dkt. 862 at 37-38).)

Thus, Day is unable to show that his counsel's performance was deficient, under the first prong of *Strickland*, where his counsel argued for the two-level reduction under § 3E1.1.  In addition, he cannot show that he was prejudiced, under the second prong of *Strickland*, where it is mere speculation that the Government would have moved for a third point reduction when the Government made it clear it was hesitant to even support the first two levels of reduction.  Thus, his trial counsel's failure with respect to the reduction under § 3E1.1 was not ineffective assistance of counsel.

## IV.  CONCLUSION AND CERTIFICATE OF APPEALABILITY

For the reasons explained in this Entry, Day is not entitled to relief through his motion for relief pursuant to 28 U.S.C. § 2255.  There was no ineffective assistance of counsel.  Accordingly, his Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (Dkt. [1]) is **DENIED** and this action is **dismissed with prejudice**.  Judgment consistent with this Entry shall now issue and a copy of this Entry shall be docketed in Case No. 1:13-cr-00185-TWP-DML-1.

Pursuant to Federal Rule of Appellate Procedure 22(b), Rule 11(a) of the Rules Governing § 2255 Proceedings, and 28 U.S.C. § 2253(c), the Court finds that Day has failed to show that reasonable jurists would find "it debatable whether the petition states a valid claim of the denial of a constitutional right" and "debatable whether [this Court] was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  The Court therefore **denies** a certificate of appealability.

**SO ORDERED.**

Date:  5/25/2018

_Tanya Walton Pratt_
TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

David Day, #11785-028
ASHLAND FEDERAL CORRECTIONAL INSTITUTION
Inmate Mail/Parcels
P.O. Box 6001
Ashland, Kentucky  41105

Cynthia J. Ridgeway
UNITED STATES ATTORNEY'S OFFICE
cynthia.ridgeway@usdoj.gov